U.S. DISTRICT COURT – N.D. OF N.Y.
**FILED**

**Mar 27 - 2026**

John M. Domurad, Clerk

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

        Plaintiff,

    v.            Civil Action No. 1:25-cv-1576 (GTS/DJS)

DOUGLAS CLINE and
JOANNE CLINE,

        Defendants.

**DEFENDANT DOUGLAS CLINE'S OBJECTIONS TO THE REPORT AND
RECOMMENDATION**
Pursuant to Fed. R. Civ. P. 72(b) and 28 U.S.C. § 636(b)(1)

**PRELIMINARY STATEMENT**

    This case presents a narrower but decisive question than the Government's broader narrative suggests: whether the United States made the particularized showing required by the Federal Debt Collection Procedures Act ("FDCPA") and the Constitution to justify a prejudgment writ of attachment against property transferred through a court-approved divorce judgment. As to Douglas Cline, the answer should be no.

    The Report and Recommendation ("R&R") recommends denial of the motions to dismiss and grants a prejudgment writ of attachment in the amount of $875,000 against the Bolton Landing property now held in Joanne Cline's name. But the attachment ruling rests on legal and procedural errors that are independent of the sufficiency of the complaint. The R&R formally recites the FDCPA's "probable validity" standard, yet then states that the Government satisfied its burden "primarily for the reasons identified in the preceding analysis in connection with the Defendants' Motions to Dismiss." R&R at 19. That sentence identifies the central error. A pleading-stage conclusion that a complaint may proceed is not the same thing as a remedy-specific finding that the Government has supplied competent proof sufficient to justify burdening property before judgment. 28 U.S.C. § 3101(c); Connecticut v. Doehr, 501 U.S. 1, 12–14 (1991).

    The error is compounded by process. Douglas Cline appeared pro se and was served at the December hearing. He had no meaningful opportunity to gather financial materials, valuation evidence, divorce records, witness testimony, or legal authority responsive to the Government's prejudgment-remedy application. Nor was any later evidentiary hearing held, despite the fact-intensive nature of the disputed issues. Due process requires a meaningful opportunity to be heard at a meaningful time and in a meaningful manner. Mathews v. Eldridge, 424 U.S. 319, 333 (1976). That did not occur here.

    The remaining errors all flow from those two threshold defects. The Government did not establish the essential elements of constructive fraud with competent evidence. It did not account adequately for the judicially sanctioned nature of the divorce transfer and the independent lawful explanation that equitable distribution provides. And it did not support the $875,000 amount with a

reliable methodology or explain why narrower alternatives would not suffice. Because the writ rests on the wrong legal framework, constitutionally inadequate process, and a record that does not establish probable validity as to the remedy imposed, it should be vacated or, at minimum, reconsidered after a prompt evidentiary hearing.

**STANDARD OF REVIEW**

Under 28 U.S.C. § 636(b)(1), this Court must make a de novo determination of those portions of the R&R to which specific objections are made. De novo review requires the Court to consider the matter anew and independently. United States v. Raddatz, 447 U.S. 667, 675 (1980).

That standard matters in two distinct ways here. First, this Court must independently determine whether the magistrate judge correctly applied the governing FDCPA provisions, including 28 U.S.C. §§ 3001, 3013, 3101, 3102, and 3304. Second, because the challenged ruling imposes a prejudgment restraint in advance of any judgment, the Court must independently examine whether the process and proof satisfy due process. The Supreme Court has repeatedly held that prejudgment restraints on property require careful judicial scrutiny because they implicate significant private interests and create a serious risk of error. Doehr, 501 U.S. at 12–14; Fuentes v. Shevin, 407 U.S. 67, 80–81 (1972); United States v. James Daniel Good Real Prop., 510 U.S. 43, 53–54 (1993).

The FDCPA itself requires more than generalized suspicion. To sustain a prejudgment remedy, the Government must establish with particularity "facts supporting the probable validity of the claim for a debt and the right of the United States to recover what is demanded in the application." 28 U.S.C. § 3101(c)(1). The hearing issues are likewise defined by statute: probable validity, statutory compliance, the existence of a qualifying ground, and the inadequacy of alternatives. 28 U.S.C. § 3101(d)(2). And even when those elements are met, Congress preserved the Court's authority to "deny, limit, condition, regulate, extend, or modify" the remedy. 28 U.S.C. § 3013. Where the amount of the attachment is excessive or unreasonable, the Court "shall order a part of the property to be released." 28 U.S.C. § 3102(g)(2).

In short, de novo review here is not perfunctory. It requires this Court to determine independently whether the Government proved entitlement to this extraordinary provisional remedy, whether the process used to impose it was constitutionally sufficient, and whether the amount and scope of the writ are supported and proportionate on the present record.

**OBJECTION I**

**THE R&R APPLIES THE WRONG LEGAL FRAMEWORK BY EFFECTIVELY COLLAPSING RULE 12(b)(6) PLAUSIBILITY INTO THE FDCPA'S DISTINCT REQUIREMENT OF PROBABLE VALIDITY**

The threshold error is legal, not factual. The R&R correctly states that the motions to dismiss are governed by Rule 12(b)(6), under which the Court asks only whether the complaint states a claim that is plausible on its face. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). At that stage, the Court accepts well-pleaded allegations as true and decides only whether the Government may proceed to discovery. The R&R separately recites the FDCPA standard for prejudgment attachment, recognizing that the Government must show "probable validity" and meet a probable-cause-like threshold. R&R at 14–15; 28 U.S.C. § 3101(c); see also

United States v. LabQ Clinical Diagnostics, LLC, 771 F. Supp. 3d 401, 430–31, 458 (S.D.N.Y. 2025).

But the R&R did not keep those standards analytically separate in application. Instead, it concluded that "the Government has satisfied its burden, primarily for the reasons identified in the preceding analysis in connection with the Defendants' Motions to Dismiss." R&R at 19. That formulation is the problem. It uses the same inferential narrative that was deemed sufficient to survive dismissal as the principal support for an extraordinary prejudgment remedy. The FDCPA does not allow that shortcut. Section 3101 requires a remedy-specific showing of probable validity and of the Government's right to recover what it demands in the application. 28 U.S.C. § 3101(c)(1). Pleading sufficiency is not enough.

The constitutional cases underscore the distinction. In Doehr, the Supreme Court rejected the notion that prejudgment attachment may rest on little more than a facially sufficient complaint or a one-sided presentation of contested facts. 501 U.S. at 12–14. Grupo Mexicano likewise reflects the longstanding caution with which federal courts must approach provisional restraints on assets prior to judgment. 527 U.S. 308, 329–33 (1999). And the Second Circuit has repeatedly described attachment as a harsh remedy that should not be granted lightly. Capital Ventures Int'l v. Republic of Argentina, 443 F.3d 214, 221 (2d Cir. 2006). That body of law recognizes a practical reality: a plaintiff may allege enough to continue litigating without having produced the competent proof necessary to justify burdening property before trial.

That gap is present here. The evidentiary items listed by the R&R as support for attachment are the same disputed themes that drove the pleading analysis: timing of the divorce relative to the Government's investigation, alleged badges of fraud, post-divorce use of the property, the HELOC, and the Government's narrative that the transfer hindered future collection. R&R at 19. What is missing is what the higher standard requires: competent proof that the divorce allocation was economically imbalanced at the time it occurred; competent proof that Douglas Cline was insolvent or reasonably should have believed he would incur debts beyond his ability to pay; competent proof that post-divorce conduct reflected retained legal dominion rather than informal family accommodation; and competent proof supporting the amount of the remedy sought. See 28 U.S.C. § 3304(a)(1), (b)(1)(B).

This distinction is not semantic. Plausibility tolerates inferential breathing room. Probable validity requires more. New York attachment cases make the same point: the moving party must show more than that attachment would be useful or convenient; there must be a real evidentiary basis for the remedy sought. See VisionChina Media Inc. v. Shareholder Representative Servs., LLC, 109 A.D.3d 49, 59–60 (1st Dep't 2013). On the present record, the Government showed at most that its fraudulent-transfer theory is litigable. That is not the same as proving present entitlement to an $875,000 restraint.

Accordingly, the writ cannot stand on the rationale the R&R employed. Even if the complaint states a claim sufficient to survive Rule 12(b)(6), that does not satisfy the Government's separate burden under 28 U.S.C. § 3101 to justify prejudgment attachment. Because the R&R effectively collapsed those two inquiries, it applied the wrong legal framework to the writ. The attachment should therefore be vacated, or at minimum reconsidered under the correct FDCPA and due process standards.

**OBJECTION II**

**THE PROCEDURE EMPLOYED VIOLATED DUE PROCESS BECAUSE DOUGLAS CLINE WAS NOT AFFORDED A MEANINGFUL OPPORTUNITY TO PREPARE, RESPOND, AND TEST THE FACTUAL BASIS FOR THE WRIT**

Independently, the writ should be vacated because it was imposed through a procedure that denied Douglas Cline a meaningful opportunity to be heard. The Supreme Court has long held that "[t]he fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." Mathews, 424 U.S. at 333. That requirement has special force where, as here, the Government seeks to burden property before judgment. Doehr, 501 U.S. at 12–14; Fuentes, 407 U.S. at 80–81; James Daniel Good Real Prop., 510 U.S. at 53–54.

The chronology matters. Douglas Cline appeared pro se. The Government's prejudgment application was converted from an ex parte request to a hearing on notice. R&R at 3–4. But service at or immediately before the hearing did not provide a meaningful opportunity to prepare. A hearing held at the moment of service is not the same thing as a meaningful adversarial opportunity to gather documents, line up witnesses, marshal legal authority, and respond to the evidentiary theory on which the Government seeks an extraordinary provisional remedy. Section 3101(d) itself contemplates a hearing at which the debtor may contest probable validity, statutory compliance, the alleged grounds for relief, and the inadequacy of alternatives. 28 U.S.C. § 3101(d)(2). That statutory opportunity is hollow if the debtor is first placed in the position of responding without time to prepare.

The prejudice was concrete. Douglas had no meaningful opportunity to present valuation materials bearing on the house and the medical practice at the relevant time, no meaningful opportunity to present contemporaneous financial evidence bearing on insolvency or ability to pay, no meaningful opportunity to present divorce records and related testimony explaining the equitable distribution, and no meaningful opportunity to develop evidence explaining the post-divorce living, maintenance, reimbursement, and HELOC-related facts on which the Government relies. Those are not collateral matters. They are the factual heart of the attachment dispute.

Nor did the December hearing cure the defect. Service at the hearing, coupled with immediate reliance on that same proceeding as the effective evidentiary basis for attachment, did not provide a meaningful chance to prepare or to test the Government's proof. Where attachment turns on disputed facts, a hearing adequate to resolve those disputes is especially important. See Ford Motor Credit Co. v. Hickey Ford Sales, Inc., 62 N.Y.2d 291, 301–02 (1984) (attachment requires proof of both a cause of action and a ground for attachment as to the defendant whose property is restrained). The Second Circuit's pro se cases reinforce the practical point: courts must take care not to disadvantage unrepresented litigants through procedural rigidity. See Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474–75 (2d Cir. 2006); Ruotolo v. IRS, 28 F.3d 6, 8 (2d Cir. 1994).

This is not merely a fairness complaint. It is a due process defect that goes to the validity of the writ itself. The Government's theory depends on disputed inferences, disputed valuations, disputed financial condition, and disputed characterizations of post-divorce conduct. Those are exactly the circumstances in which the risk of error is highest and meaningful procedural safeguards are most needed. Doehr, 501 U.S. at 12–14.

Accordingly, the writ should be vacated on procedural grounds alone. At minimum, no continued restraint should remain in place unless and until Douglas Cline is afforded a prompt evidentiary hearing, after a fair opportunity to prepare, at which the Government bears the burden of establishing the statutory prerequisites for attachment with competent proof.

## OBJECTION III

**THE GOVERNMENT DID NOT ESTABLISH THE ESSENTIAL ELEMENTS OF CONSTRUCTIVE FRAUD WITH COMPETENT EVIDENCE, PARTICULARLY INSOLVENCY AND LACK OF REASONABLY EQUIVALENT VALUE**

The Government's alternative route to sustaining the transfer theory is constructive fraud. But constructive fraud, no less than actual fraud, requires proof of specific statutory elements. Under 28 U.S.C. § 3304(a)(1), a transfer as to a preexisting debt is constructively fraudulent only if the debtor did not receive reasonably equivalent value and was insolvent at the time or became insolvent as a result of the transfer. Under § 3304(b)(1)(B), a transfer as to present or future debt likewise requires lack of reasonably equivalent value and a further showing that the debtor was left with unreasonably small assets or intended, or reasonably should have believed, that he would incur debts beyond his ability to pay as they became due. Those are concrete statutory predicates, not matters to be presumed from narrative force.

The record does not establish those elements with competent proof. On insolvency, the Government provided no contemporaneous balance sheet, no asset-liability analysis, no expert financial evaluation, and no documentary record showing Douglas Cline's financial condition at the time of the divorce transfer. Instead, the Government and the R&R rely heavily on later statements in the CSA action about ability to pay a future fine. But a later litigation position regarding ability to pay does not, by itself, establish insolvency at the time of a prior divorce transfer. Nor does it substitute for the specific financial showing the constructive-fraud provisions require.

The deficiency is just as serious on reasonably equivalent value. The Government's theory assumes that Joanne received a residence of substantial value while Douglas retained a medical practice of little or no value. But the record contains no appraisal of the Bolton property tied to the date of the divorce transfer, no expert valuation of the practice tied to that same date, no serious analysis of liabilities or obligations associated with the practice, and no developed analysis of the broader equitable distribution as a whole. A court cannot move from "the Government alleges the practice had little worth" to "the Government has probably proven lack of reasonably equivalent value" without the intervening proof.

Second Circuit authority cautions against exactly that leap. In Sharp, the court emphasized that constructive-fraud analysis turns on economic substance and statutory elements, not generalized suspicion. In re Sharp Int'l Corp., 403 F.3d 43, 53–54 (2d Cir. 2005). HBE Leasing likewise underscores that the adequacy of consideration matters, and that fraudulent-conveyance doctrine cannot be reduced to an after-the-fact inference untethered to actual value. HBE Leasing Corp. v. Frank, 61 F.3d 1054, 1059–60, 1062–63 (2d Cir. 1995). And although arising in a different procedural setting, Bank of China confirms that a court may not rest significant relief on speculation or conjecture where the essential factual showing is missing. Bank of China v. NBM LLC, 359 F.3d 171, 176 (2d Cir. 2004).

The Government may answer that full trial proof is not yet required. That is true, but beside the point. The question is not whether the Government must already prove its case by a preponderance. The question is whether it produced enough competent evidence to satisfy the FDCPA's probable-validity standard as to the specific theory on which attachment rests. 28 U.S.C. § 3101(c)(1). It did not. The present record lacks the evidentiary foundation necessary to find probable validity on constructive fraud.

Accordingly, because the Government failed to establish the essential elements of constructive fraud with competent proof, the writ cannot be sustained on that theory. At minimum, the matter should be remanded for an evidentiary hearing before any continued attachment remains in force.

**OBJECTION IV**

**THE R&R FAILS TO GIVE ADEQUATE LEGAL WEIGHT TO THE JUDICIALLY SANCTIONED NATURE OF THE DIVORCE TRANSFER AND THE INDEPENDENT LAWFUL EXPLANATION THAT EQUITABLE DISTRIBUTION PROVIDES**

The transfer at issue did not occur through a secret deed, a nominee shell, a sham trust, or an off-record side agreement. It occurred through a New York divorce and equitable-distribution proceeding culminating in a judgment and deed transfer. That context is not incidental. It is legally significant because it provides an independent, facially lawful explanation for the transfer and substantially weakens the inference that the transfer itself was fraudulent.

New York domestic-relations law recognizes that a divorce judgment allocates property rights through equitable distribution. See N.Y. Dom. Rel. Law § 236(B); see also Majauskas v. Majauskas, 61 N.Y.2d 481, 485–86 (1984). Once that process has concluded and title is transferred pursuant to the judgment, the transfer carries a legal pedigree materially different from an informal or concealed conveyance. That does not mean a divorce transfer can never be scrutinized. It does mean that a court must take seriously the existence of an independent lawful explanation before inferring fraud from timing or later family interactions.

The R&R acknowledges the divorce context but does not give it real analytical weight. Instead, it relies principally on a nonbinding decision, United States v. Schippers, for the broad proposition that a debtor cannot avoid FDCPA scrutiny merely because a transfer occurred through a divorce decree. R&R at 12–13. That proposition may be uncontroversial in the abstract. But it does not answer the real question here: whether the Government's evidentiary showing is strong enough to overcome the legitimacy ordinarily associated with a court-supervised equitable distribution on the facts of this case. The R&R did not perform that more careful inquiry.

Second Circuit fraudulent-transfer law points the other way. HBE Leasing warns against inferring fraud too readily from proximity, insider status, or suspicion where the transaction has an independent lawful explanation and the proof does not establish the statutory elements. 61 F.3d at 1059–60, 1062–63. Sharp likewise reflects the principle that facially legitimate transactions should not be recharacterized as fraudulent without proof that satisfies the governing standards. 403 F.3d at 54–56. Those principles matter here because the Government's theory asks the Court to treat the ordinary legal consequences of divorce—one spouse receiving the residence, the other retaining a business, continued family familiarity with the property—as though they were themselves badges of fraud.

The problem is especially acute with the post-divorce facts the Government emphasizes. Occasional presence at the property, payment of some expenses, or HELOC-related conduct may be disputed and may deserve scrutiny. But those matters do not erase the independent lawful explanation for the transfer itself. Nor do they transform a court-approved equitable distribution into a sham absent proof that the divorce process was collusive, economically fictitious, or otherwise fraudulent in its own right. The present record contains no such proof.

Accordingly, the R&R's treatment of the divorce transfer is analytically incomplete. By failing to accord real weight to the judicially sanctioned nature of the transfer and the independent lawful explanation that equitable distribution provides, the R&R drew a fraudulent inference too readily from a record that remains substantially disputed. That error further undermines the conclusion that the Government established probable validity sufficient to justify prejudgment attachment.

**OBJECTION V**

**THE $875,000 WRIT IS EXCESSIVE, INSUFFICIENTLY SUPPORTED, AND IMPROPERLY IMPOSED WITHOUT A REASONED ANALYSIS OF PROPORTIONALITY OR NARROWER ALTERNATIVES**

Even if some prejudgment remedy were permissible, the amount and scope of the writ cannot be sustained on this record. The writ restrains the property to the extent of $875,000 and prohibits sale, mortgage, or other encumbrance absent further order. Yet the record does not explain in a reasoned, evidence-based way how that figure was derived, why it was necessary, or why narrower alternatives would not suffice.

The R&R adopted $875,000 as a "reasonable probability" based largely on the Government's projected penalty range in the separate CSA action and its assertion that fines in somewhat similar cases have ranged from $200,000 to $1.2 million. R&R at 18–19. But a broad range drawn from other cases is not a methodology. The Government offered no appraisal-based equity analysis tied to the actual property interest being restrained, no supported calculation linking the amount sought to probable recovery in this case, and no meaningful discussion of how the cited comparator cases were selected, whether they reflected settlements or judgments, or why they justified $875,000 here. Without that context, the asserted range is advocacy, not evidence.

The disproportionality concern is heightened by the R&R's own recognition that the sequestration theory fell away because the HELOC had been paid off. R&R at 13–14. That development should have prompted a fresh examination of the amount and scope of the remaining restraint. Instead, the attachment figure remained intact without a corresponding evidentiary recalibration. The FDCPA does not permit that kind of rough approximation. Congress specifically preserved the Court's authority to tailor prejudgment relief and required release of property if the amount of the attachment is excessive or unreasonable. 28 U.S.C. §§ 3013, 3102(g)(2).

The constitutional cases point in the same direction. Doehr teaches that courts must consider the severity of the burden imposed and the risk of erroneous deprivation before allowing prejudgment restraints. 501 U.S. at 11–18. A restraint of this magnitude is not a minor administrative measure. It immobilizes substantial property value and operates as a significant encumbrance while the parties continue litigating disputed issues. The Government's interest is in preserving possible future

recovery, not in immediate possession. That interest does not excuse the absence of a supported calculation or a serious examination of narrower alternatives.

Those alternatives were available and should have been analyzed. A sale with proceeds held in escrow, a reduced attachment pegged to a supported estimate of likely exposure, or other structured preservation mechanisms could have been considered if some relief were warranted. The R&R did not perform that work. The possibility that the parties may later seek modification is not a substitute for the Court's threshold obligation to determine, before imposing a sweeping restraint, whether less restrictive means can protect the Government's interest. See 28 U.S.C. § 3101(d)(2)(D).

Accordingly, even if the Court does not vacate the writ entirely, the present order cannot remain in its current form. The $875,000 amount is insufficiently supported, the restraint is broader than the present record justifies, and the failure to analyze narrower alternatives is itself legal error. The writ should therefore be vacated, substantially reduced, or remanded for a prompt evidentiary hearing and a properly supported proportionality analysis.

**REQUEST FOR RELIEF**

WHEREFORE, Defendant Douglas Cline respectfully requests that the Court:

1. Reject or modify the Report and Recommendation;

2. Hold that the Government has not established the probable validity required by 28 U.S.C. § 3101 to support the prejudgment writ of attachment as issued;

3. Vacate the prejudgment writ of attachment;

4. In the alternative, substantially reduce or narrowly tailor the writ;

5. Order a prompt in-person evidentiary hearing before any continued prejudgment restraint remains in place; and

6. Grant such other and further relief as is just and proper.

Respectfully submitted,

Douglas Cline
Defendant, Pro Se

*Douglas Cline*

55 Railroad Place, Apt. 523
Saratoga Springs, NY 12866
alphadoug@earthlink.com
856-534-9205
Dated: March 28, 2026